

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

UNITED STATES OF AMERICA,

v.

BELAL AMIN ALSAIDI,

Defendant.

Criminal Case No. 3:11–CR–244

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Government's Motion for Entry of Restitution Order ("Motion"). (ECF No. 29.) For the reasons stated below, the Motion is GRANTED.

## BACKGROUND

In November 2006, Defendant Belal Amin Alsaidi purchased Sky Limits Super Market ("Sky Limits"), a food and convenience store located in Petersburg, Virginia. Between May 2007 and March 2009, Alsaidi sold shoes and clothing bearing counterfeit trademarks out of the back room of Sky Limits. In November 2008, Alsaidi took over Paradise Fashions, a clothing and shoes store, and moved the majority of his counterfeit goods business from Sky Limits to Paradise Fashions. Alsaidi obtained the counterfeit goods from an unknown resident of New York, who purchased the goods from Chinese suppliers at storage warehouses in the New York City area.

On January 16, 2009, Alsaidi received counterfeit shoes via United Parcel Service ("UPS") delivery to Paradise Fashions bearing the following counterfeit marks: (1) "Air Jordan"; (2) "Air Max"; (3) Nike "Swoosh" design; and (4) Nike Jumpman design, marks which are registered in the United States Patent and Trademark Office ("USPTO") by Nike, Inc. ("Nike") and were in use at the time, in violation of 18 U.S.C. § 2320. (Statement of Facts, ¶ 8, ECF No. 11.) Subsequent investigations revealed that during the relevant time period, Alsaidi received approximately 1,423

1

cases of counterfeit goods via UPS from the unknown New York resident. During the investigations, 3,052 counterfeit items were seized from Alsaidi's stores and residence. The seized items consists of shoes and clothing items which bore various counterfeit trademarks registered to the following companies: 7 For All Mankind; Affliction; AGBL Holdings, LLC (Head Gear, Inc., Blac Label design); Apple Bottom; Audigier Brand Management Group, LLC (Christian Audigier); Baby Phat; Burberry Limited; Chanel, Inc.; Coach, Inc.; COOGI Partners, LLC; Diesel; Dolce & Gabbana; Fendi; Gucci; Guru Denim, Inc. (True Religion); Hardy Life, LLC (Ed Hardy); Juicy Couture; Lacoste Alligator, S.A.; Laguna Beach; Louis Vuitton; Luxine, Inc.; National Football League; Nike; The North Face Apparel Corp.; Nowhere Ltd. (Bape Co., Ltd.); Roca Wear; Smet; and Timberland, LLC.[1] (Presentence Investigation Report ("PSR") ¶ 17, ECF No. 17; Gov't's Ex. 8.[2]) Law enforcement also seized 329 counterfeit DVDs and CDs registered to the Motion Picture Association of America ("MPAA") and Recording Industry Association of America ("RIAA"). (*See* Gov't's Ex. 8.)

On September 20, 2011, a federal grand jury returned a four-count indictment against Alsaidi charging him with one count of Conspiracy to Commit Trafficking in Counterfeit Goods, in violation of 18 U.S.C. § 371, and three counts of Trafficking in Counterfeit Goods, in violation of 18 U.S.C. § 2320(a). On November 15, 2011, Alsaidi pled guilty to one count of Trafficking in Counterfeit Goods. As part of his plea agreement, Alsaidi agreed to make restitution for the full amount of all the victims' losses. (Plea Agreement ¶ 8, ECF No. 12.)

---

[1] Although AGBL Holdings, LLC and Nowhere Ltd. are listed in the Indictment as victims, the Government does not include them in the list of victims attached to its Motion. (*Compare* Indictment at 4, ECF No. 3, *with* Gov't's Mot. Attachment A to Restitution O., ECF No. 29-2.)

[2] Citations to the Government's Exhibits are to the exhibits submitted by the Government in open court at the hearing.

Pursuant to the relevant conduct amount of $751,344,[3] Alsaidi's applicable guideline range was 30 to 37 months. (PSR ¶ 19 & Worksheet A.) At sentencing, Alsaidi moved for a downward variance, the Court granted the variance and sentenced Alsaidi to five months of incarceration to be followed by three years of supervised release, with five months of the supervised release term to include home confinement. The Court also directed the parties to either file their respective positions on restitution or submit an agreed upon restitution order. The parties failed to come to an agreement with respect to restitution and are now before the Court on that issue. On June 8, 2012, the Court heard oral arguments on this matter, and took the matter under advisement. The Court now issues its ruling.

## LEGAL STANDARD

The Mandatory Victims Restitution Act ("MVRA") makes restitution in the full amount of the victim's loss mandatory for property offenses in which an identifiable victim suffered a pecuniary loss. 18 U.S.C. §§ 3663A(c)(1)(A)(ii) & (B); *see also United States v. Leftwich*, 628 F.3d 665, 668 (4th Cir. 2010). The court, however, may not order restitution if "the number of identifiable identifiable victims is so large as to make restitution impracticable; or [the complexity of determining] the cause or amount of the victim's losses would complicate or prolong the sentencing process [such] that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. §§ 3663A(c)(3)(A) & (B).

An order of restitution in a case involving crimes against property must require the defendant to: (1) return the property to its proper owner, or (2) if returning the property is

---

[3] The estimated retail value of the infringed goods is approximately $2.3 million. This calculation is based on the assumption that each shoe retails for $100, and that there were 16 pairs of shoes in each of the 1,423 cases. (PSR ¶ 18.) The relevant conduct amount, however, takes into consideration the fact that a consumer would not purchase the counterfeit good at the retail price, but at a reduced amount of about $33. Using the reduced amount of $33 per pair of shoe, multiplied by 16 pairs, multiplied by 1,423 cases, the resulting amount is $751,344. (PSR ¶ 19.)

3

impossible, impracticable, or inadequate, pay the owner an amount equal to the greater of the value of the property on the date of damage, loss, or destruction, or the value of the property at the time of sentencing, less the value of any property returned. 18 U.S.C. § 3663A(b)(1). Further, the restitution order must require the defendant to reimburse the victims for "lost income . . . and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4). The court must order restitution in the full amount of the victim's loss and may not consider the defendant's economic circumstances. 18 U.S.C. § 3664(f)(1)(A). The government bears the burden of proving the restitution amount by a preponderance of the evidence. 18 U.S.C. § 3664(e).

## DISCUSSION

Pursuant to the MVRA, full restitution is mandated in this case, and moreover, Alsaidi previously agreed to the entry of a restitution order for the full amount of the victims' loss in this action. (*See* Plea Agreement ¶ 8.) The primary issue before this Court, however, is the proper amount of restitution to be awarded.[4] "[T]he amount of restitution that may be awarded is limited to the victim's provable actual loss." *United States v. Chalupnik*, 514 F.3d 748, 748 (8th Cir. 2008). Here, the question of actual loss turns on the appropriate methodology to be employed in computing the loss sustained by the victims.

The Government's calculation of a total restitution amount of $154,769.75, is based on a loss calculation methodology expounded in *United States v. Milstein*, 481 F.3d 132 (2d Cir. 2007). The

---

[4] The Government provided a list of 29 identifiable victims in this action. Alsaidi fails to contend that the 29 identified companies are not victims or that their number would make restitution impracticable. As such, the Court presumes that the 29 identifiable companies who the Government claims suffered some pecuniary loss are victims.

4

Government's approach accounts for: (1) the estimated wholesale value[5] at the time of sentencing for each seized good that each victim would have received if Alsaidi had actually purchased the seized products from the victim-companies for resale;[6] and (2) investigator fees requested by the victims, where applicable.[7] According to the Government, "the amount of restitution proposed is minimal in light of the 1,423 shipments that were made to the defendant over the course of two years." (Gov't's Mot. Entry Restitution O. ("Gov't's Mot.") 6 (citing PSR ¶ 12), ECF No. 29.) Alsaidi, on the other hand, merely contends that Government has not met its burden of proving the restitution amount but does not offer an appropriate methodology for computing actual loss.[8] At the

---

[5] At the hearing, the Government stated that the wholesale value is based on the market leader and biggest victim's representation—Nike—that the wholesale price is generally 50 percent of the retail price.

[6] The Government explains that based upon the inventory that was seized in this case, there are 29 trademark infringement victims. Six of the 29 victims submitted loss statements based on the counterfeit items bearing logos or trademarks that were recovered in the course of the investigation. The victims quantified their losses based on different theories ranging from the Manufacturer's Suggested Retail Price ("MSRP") to the wholesale value. (*See* Gov't's Mot. Ex. 1, ECF No. 29-1.) The Government's calculation ignores the loss amounts requested by victims to the extent those requests were based on methodologies inconsistent with the Government's methodology. (*See* Gov't's Mot. 2 n.2.) Additionally, the Government's calculation does not account for all the products in all the shipments as those goods were presumably sold.

[7] Some of the victims requested both attorney's fees and investigator fees. Consistent with this Court's memorandum opinion in *United States v. Lam*, No. 3:07-CR-374, 2011 WL 1167208 (E.D. Va. Mar. 28, 2011) (Spencer, J.), the Government only recommends restitution for investigator fees, and not attorney's fees. (*See* Gov't's Mot. 2 n.2.) The Court orders Alsaidi to reimburse the victims' investigation fees in the amount of $1,796.50, pursuant to 18 U.S.C. § 3663A(b)(4). (*See* Gov't's Ex. 9.) This investigation amount is included in the total restitution amount of $154,769.75.

[8] Instead of specifically addressing how the Government has not met its burden and explaining why its loss methodology is inappropriate, Alsaidi simply outlines four different general approaches courts take in determining restitution, and discusses the "los[t] gross revenue" approach at length, proceeding to explain why that approach is inapplicable to this case and why the Fourth Circuit rejected it in *United States v. Hicks*, 46 F.3d 1128 (4th Cir. 1995) (unpublished table decision). In fact, *Milstein* is never even mentioned in Alsaidi's brief. Alsaidi only brings up the broad issues relevant to the Government's Motion in conclusory statements toward the end of his brief, stating that the Government's request to base restitution on the value of the seized inventory is not supported by any case law. (Def.'s Response to Gov't's Mot. Restitution O. 6, ECF No. 30.) This does not advance Alsaidi's position. As the Government suggests, it is more than fair for Alsaidi to make restitution under this wholesale value methodology for the victims and counterfeit goods that are

hearing, Alsaidi's counsel expounded that there is no reliable estimate, and calculating loss in this action is unduly complicated and therefore the Court need not order restitution.

The Court finds that the restitution methodology used in *Milstein* is properly applicable to the case at bar, that the Government's reliance of Nike's representation of the wholesale value is a dependable estimate, and the calculation of loss is not unduly complicated as it is based simply on the wholesale value of all the seized items. In *Milstein*, the defendant was prosecuted for a series of violations of Title 21 of the United States Code (governing food and drugs), as well as for knowingly distributing prescription drugs in violation of criminal trademark laws set forth in 18 U.S.C. § 2320(a)—the same statute under which Alsaidi is convicted. Milstein's scheme was to purchase foreign versions of prescription drugs, which were cheaper and less heavily regulated than their American counterpart drugs, and then repackage the drugs with counterfeit packaging modeled on the victims' trademarks, for resale in the United States. *Milstein*, 481 F.3d at 134. Milstein successfully sold the foreign, counterfeit drugs to doctors, pharmacists, and pharmaceutical suppliers. *Id.* The Second Circuit upheld the district court's $3.5 million restitution award, which was based on "sales that the[ ] two [victim] companies would have made if Milstein had actually purchased the products from them for distribution in the U.S. market." *Id.* at 135. Specifically, the restitution amount was based on the Court's determination of the "value of the property on the date of the damage" under the Victim and Witness Protection Act, which contains language that is virtually identical to the Mandatory Victims' Restitution Act applicable in this case. *Id.* The court found that "[t]he standard measure for determining the value to the victim of infringed trademarks[—]the victim's lost sales"— was a reasonable measure of the "value of the [intellectual] property" misappropriated. *Id.* at 137 (citing 15 U.S.C. § 1117(a)(1)–(2)).

---

readily identifiable in the form of Alsaidi's seized inventory, given that a large amount of victims and counterfeit goods are undoubtedly unaccounted for.

Applying *Milstein* to the case at bar, the Court finds that the Government established $154,769.75 as the approximate wholesale value of the counterfeit goods seized in the investigation. (*See* Gov't's Ex. 8 (computing the restitution amount for each victim based on the wholesale value of seized goods at the time of sentencing).) As in *Milstein*, the amount represents an estimation of what Alsaidi would have had to pay the victim-companies in order to sell legitimate, and not counterfeit, products with the victim-companies' trademarks—the victims' lost sales. The Court recognizes that this amount does not take into account the entire amount of loss suffered by the victims because it accounts only for the seized goods, and not the goods which were sold; however, as the Tenth Circuit has stated, "[t]he purpose of restitution is . . . to ensure that victims, to the greatest extent possible, are made whole for their losses." *United States v. Hudson*, 483 F.3d 707, 710 (10th Cir. 2007) (quotation marks and citation omitted). Because the Government has met its burden, the Court GRANTS the Motion.

## CONCLUSION

For the reasons stated above, the Court finds that the Government met its burden of proving that $154,769.75 is the actual loss sustained by the victims in this action. Accordingly, the Government's Motion is GRANTED.

Let the Clerk of the Court send a copy of this Memorandum Opinion to Defendant and all counsel of record.

A Restitution Order will accompany.

/s/
James R. Spencer
United States District Judge

ENTERED this 8th day of August 2012.